**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **COACH, INC. and** | ) | |
| **COACH SERVICES, INC.,** | ) | |
| | ) | **No. 13 C 6618** |
| **Plaintiffs,** | ) | |
| **v.** | ) | **Judge Guzman** |
| | ) | |
| **THE PARTNERSHIPS and** | ) | **Magistrate Judge Cole** |
| **UNINCORPORATED ASSOCIATIONS** | ) | |
| **IDENTIFIED ON SCHEDULE "A",** | ) | |
| | ) | |
| **Defendants.** | ) | |

### REPORT AND RECOMMENDATION

The plaintiffs (collectively, "Coach" Company) are a United States-based fashion brand that produces Coach branded handbags, accessories, footwear, clothing, etc. They are suing the defendants – individuals and entities that reside in the People's Republic of China or other foreign jurisdictions – for federal trademark infringement, counterfeiting and false designation of origin in violation of the LanhamAct, 15 U.S.C. §§ 1114 and 1125(a), cyberpiracy in violation of the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d), and deceptive practices in violation of the Illinois Uniform Deceptive Trade Practices Act ("UDTPA"), 815 Ill. Comp. Stat. § 510, *et seq*. The defendants allegedly operate commercial websites, or internet stores, targeting Illinois residents with offers to sell products bearing counterfeit versions of plaintiffs' trademarks by using a variety of domain names set up by registrants and creating websites that incorporate copyright-protected content, images, and product descriptions to mislead consumers into believing that they are purchasing genuine Coach Products. The plaintiffs have not licensed or authorized the defendants to use any of their marks.

On September 20, 2013, Judge Guzman granted Coach's *ex parte* motion for entry of (1) a

temporary restraining order ("TRO"); (2) a domain name transfer order; (3) an asset restraining order; (4) an expedited discovery order; and (5) service of process by email and electronic publication. [Dkt. #19]. The TRO was set to expire on October 4th. Fed.R.Civ.P. 65(b)(2). On September 24th, the plaintiffs moved for an order extending the TRO to October 18th. [Dkt. #23]. They also moved for a preliminary injunction on September 25th. [Dkt. #24]. Judge Guzman has referred that motion to me for a report and recommendation.

A party seeking a preliminary injunction must establish that it has (1) some likelihood of success on the merits, and (2) no adequate remedy at law and will suffer irreparable harm if a preliminary injunction is denied. *Grote v. Sebelius*, 708 F.3d 850, 853 n.2 (7th Cir. 2013); *Ezell v. City of Chicago,* 651 F.3d 684, 694 (7th Cir. 2011). Once the threshold requirements are met, the court weighs the equities, balancing each party's likelihood of success against the potential harms. *Grote*, 708 F.3d at 853 n.2; *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the U.S., Inc.,* 549 F.3d 1079, 1100 (7th Cir.2008). The more the balance of harms tips in favor of an injunction, the lighter the burden on the party seeking the injunction to demonstrate that it will ultimately prevail. *Grote*, 708 F.3d at 853 n.2.

### I.
### Likelihood of Success on the Merits

### A.
### Trademark Claims

Under the Lanham Act, a defendant is liable for federal trademark infringement and counterfeiting if the defendant "without the consent of the registrant ... use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services or in connection with

2

which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(a). Section 43(a) of the Lanham Act further imposes liability upon a defendant who "on or in connection with any goods or services ... uses in commerce any ... false designation of origin, false or misleading description of fact, or false or misleading misrepresentation of fact, which is likely to cause confusion or to cause mistake, or to deceive as to the ... origin, sponsorship, or approval of his or her goods ... by another person." 15 U.S.C. § 1125(a)(1). Under the UDTPA, a defendant is liable for, among other things: (1) passing off goods as those of another; (2) causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods; or (3) causing likelihood of confusion or of misunderstanding as to affiliation, connection, or association with another. 815 ILCS 510/2(a).

The elements of plaintiffs' Lanham Act and UDTPA claims are the same. *Deckers Outdoor Corp. v. Does 1-100*, 2013 WL 169998, 2 (N.D.Ill. 2013)(collecting cases). First, a plaintiff must show that its mark is protected under the Lanham Act. Second, a plaintiff must demonstrate that the challenged mark is likely to cause confusion among consumers. *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 643 (7th Cir. 2001); *Barbecue Marx, Inc. v. 551 Ogden, Inc.*, 235 F.3d 1041, 1043 (7th Cir. 2000).

The plaintiffs hold valid and subsisting registrations under 15 U.S.C. §1052 for their trademarks in the United States. [Dkt. #12, Lau Decl. ¶ 8]. As such, they are entitled to a presumption that their mark is valid. *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 209 (2000). That means that, even if the mark is considered descriptive, it is presumed to have acquired secondary meaning. *Custom Vehicles, Inc. v. Forest River, Inc.*, 476 F.3d 481, 485 (7th Cir. 2007). Here, there is no evidence that the plaintiff's marks are generic or descriptive. *See Georgia-Pacific*

3

*Consumer Products LP v. Kimberly-Clark Corp.*, 647 F.3d 723, 727 (7th Cir. 2011)(it is up to the party challenging the mark to put forth evidence of invalidity); *Custom Vehicles, Inc. v. Forest River, Inc*., 476 F.3d 481, 486 (7th Cir. 2007)(opponent has the burden of rebutting the presumption of validity that accompanies registration). The plaintiffs have not licensed or authorized defendants to use any Coach trademarks. [Dkt. #12, Lau. Decl. ¶18]. The plaintiffs have shown they have a strong likelihood of succeeding on the first element.

To determine whether a plaintiff satisfies the second element – that the challenged mark is likely to cause confusion among consumers – a court should consider several factors: (1) the similarity between the marks in appearance and suggestion; (2) the similarity of the products; (3) the area and manner of concurrent use; (4) the degree of care likely to be exercised by consumers; (5) the strength of the plaintiff's mark; (6) any actual confusion; and (7) the intent of the defendant to "palm off" his product as that of another. *AutoZone, Inc. v. Strick*, 543 F.3d 923, 929 (7th Cir. 2008). No one factor is dispositive, but the similarity of the marks, actual confusion, and the defendant's intent are "particularly important." *Id*.

Plaintiffs have submitted extensive documentation showing that defendants are selling counterfeit Coach products that are virtually identical in appearance to the products plaintiffs sell. [Dkt. #12, Lau Decl., ¶¶ 16-22]. Plaintiffs and defendants both advertise and sell their products over the internet, targeting consumers looking for genuine Coach merchandise. [*Id*. ¶¶ 16-22]. The defendants' websites are metatagged so that consumers searching for authentic Coach merchandise on the internet are directed to the counterfeit sites. They use the mark "Coach" in many of their domain and website names. The plaintiffs claim that those consumers are diverse with varying degrees of sophistication, and they are likely to have difficulty distinguishing authentic Coach

merchandise from counterfeit products. *See Coach Leatherware Co., Inc. v. AnnTaylor, Inc*., 933 F.2d 162, 170 (2nd Cir. 1991)(the sophisticated consumer is more likely to assume presence of well-known mark means an association with the manufacturer); *see also CAE, Inc. v. Clean Air Engineering, Inc*., 267 F.3d 660, 685 (7th Cir. 2001)(evidence of actual confusion is not required); *but see Coach, Inc. v. Diva's House of Style*, 2012 WL 6049722, 6 (N.D.Ind. 2012)(the high price of authentic Coach items tends to suggest that the consumers would take a great deal of care when making a purchase).

The plaintiffs also state that some of the defendants' websites acknowledge the products they are selling are fakes or knock-offs. [Dkt. #12, Lau. Decl. ¶17]. In those instances, the evidence tends to support a claim for trademark dilution. *AM General Corp. v. DaimlerChrysler Corp*., 311 F.3d 796, 812 (7th Cir. 2002); *Ty Inc. v. Perryman*, 306 F.3d 509, 511 (7th Cir. 2002). It should come as no surprise that there is a fair segment of the consuming public that seeks out, not authentic Coach bags, but facsimiles in order to avoid the cost of the original. It is unclear from the complaint and the evidence how many of the defendants acknowledge they are selling knock-offs. Apparently, a fair portion attempt to masquerade as authorized dealers. [Dkt. #1, Compl., ¶ 16]. In those instances, of course, confusion among consumers at point of sale is a real threat.

Lastly, the plaintiffs' Coach marks are strong. The brand and trademark are famous and have a great deal of economic and marketing strength. *Diva's House of Style*, 2012 WL 6049722, 7; *Coach, Inc. v. Ocean Point Gifts,* 2010 WL 2521444 *4 (D.N.J. 2010). "The stronger the mark, the more likely it is that encroachment on it will produce confusion." *AutoZone, Inc.,* 543 F.3d at 933. Taking all the relevant factors into consideration, the plaintiffs have demonstrated they are highly likely to succeed on the element of confusion among consumers.

**B.**

**Cyberpiracy**

Plaintiffs also charge defendants with cyberpiracy in violation of the ACPA. The ACPA was enacted to combat "cybersquatting," which is the bad faith registration of domain names with intent to profit from the goodwill associated with the trademarks of another. *Deckers Outdoor*, 2013 WL 169998, 4; *Vulcan Golf, LLC v. Google Inc.,* 726 F.Supp.2d 911, 915 (N.D.Ill.2010). Cybersquatters register well-known marks to prey on customer confusion by misusing the domain name to divert customers from the mark owner's site to the cybersquatter's own site. *Deckers Outdoor*, 2013 WL 169998, 4. To state a claim under the ACPA, Deckers must show that (1) it had a distinctive or famous mark at the time the domain name was registered, (2) the defendant[s] registered, trafficked in, or used a domain name that is identical or confusingly similar to plaintiff's mark, and (3) the defendant[s] had a bad faith intent to profit from that mark. *Deckers Outdoor*, 2013 WL 169998, 4.

It is undisputed that the COACH trademarks are well-known and famous among consumers in the United States and worldwide, *Sara Lee Corp. v. American Leather Products, Inc*., 1998 WL 433764, 10 (N.D.Ill. 1998); *Coach, Inc. v. O'Brien,* 2012 WL 1255276, 12 (S.D.N.Y. 2012), since Coach products were first sold in 1941, as evidenced by the extensive, unsolicited media coverage of the brand. [Dkt. #12, Lau Decl., ¶¶ 6, 10]. Additionally, defendants register, traffic in and use domain names that are identical or confusingly similar to Coach's well-known marks. As described above, many of the defendants' domain names directly incorporate the word "Coach," and use copyright-protected photographs of Coach products and logos without a license in order to sell counterfeit Coach products. These facts manifest bad faith intent to profit from the Coach marks. The plaintiffs are likely to succeed on the merits of their ACPA claim.

## II.
## Irreparable Harm and Inadequate Remedy at Law

Once a court determines that a plaintiff is likely to succeed on the merits of its claims, it must then consider whether the plaintiff will suffer irreparable harm without a preliminary injunction, and whether it has an adequate remedy at law. It is well settled that injuries arising from Lanham Act violations are presumed to be irreparable, even if the plaintiff fails to demonstrate a business loss. *Promatek Industries, Ltd. v. Equitrac Corp.*, 300 F.3d 808, 813 (7th Cir. 2002). In addition, the plaintiff has submitted evidence that it has spent substantial sums of money to market the Coach brand in the United States and abroad. [Dkt. #12, Lau Decl., ¶ 10]. There is also evidence that Coach products have also been the subject of extensive unsolicited publicity and have long been among the most popular purses and handbags in the world. *Id*. This shows a threat of irreparable harm to the reputation and goodwill Coach has developed with respect to its brand. This risks diluting the mark and undermining the many years that Coach has spent "nurturing its business." *Ty, Inc*., 237 F.3d at 903. Accordingly, the plaintiff has shown that it is likely to suffer irreparable harm and has no adequate remedy at law.

### III.
### Balancing the Harms and Public Interest

Finally, the court must consider the balance of harms—the irreparable harm defendants will suffer if the injunction is enforced weighed against the irreparable harm plaintiffs will suffer if it is not. *Protomark*, 300 F.3d at 813. The court must also look at the effect the injunction will have on the public. *Id.* The more likely the plaintiff is to succeed on the merits, the less heavily these balances need tip in its favor. *Grote v. Sebelius*, 708 F.3d 850, 853 n.2 (7th Cir. 2013); *Planned Parenthood of Indiana, Inc. v. Commissioner of Indiana State Dept. Health*, 699 F.3d 962, 972 (7th Cir. 2012). Here, the plaintiffs are very likely to succeed on the merits, and it is difficult, if not impossible, to imagine that the defendants will somehow establish they have any right to make unauthorized use of the Coach trademarks. As such, while the defendants might claim to suffer harm, it is not legally recognized harm. They are free to sell their products under their own trademarks, of course.

Additionally, the public interest also weighs in favor of entering a preliminary injunction. *See Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of America, Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008)("Where appropriate, this balancing process should also encompass any effects that granting or denying the preliminary injunction would have on nonparties (something courts have termed the 'public interest')."). In trademark infringement cases such as this, "the public interest is served by [an] injunction because enforcement of the trademark laws prevents consumer confusion." *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 469 (7th Cir. 2000).

### CONCLUSION

For the foregoing reasons, it is hereby recommended that the plaintiffs' motion for a preliminary injunction [Dkt. #24] be GRANTED, under the terms that were employed in the TRO.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

DATE: 10/1/13

Specific, written objections to the Report and Recommendation must be filed with the Clerk of the District Court for the Northern District of Illinois, 219 S. Dearborn, 20th Floor, Chicago, IL 60604, within fourteen (14) days of being served with a copy of the Report and Recommendation. Failure to file specific, written objections within the specified time waives the right to appeal this Report and Recommendation. *See* Fed.R.Civ.P. 72(b)(2); 28 U.S.C. 636(b)(1)(C); *United States v. Brown*, 79 F.3d 1499, 1504, n. 4 (7th Cir. 1996); *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 329 (7th Cir.1995); *Video View, Inc. v. Studio 21 Ltd.*, 797 F.2d 538, 539 (7th Cir. 1986).